UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

TONYA B.,[1]                                   )
                                               )
              Plaintiff,                       )
                                               )
        v.                                     )        No. 4:24-cv-00005-KMB-SEB
                                               )
LELAND C. DUDEK,[2]                            )
                                               )
              Defendant.                       )

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Tonya B. applied for disability benefits from the Social Security Administration

("SSA") on February 8, 2021, alleging an onset date of August 28, 2020.   [Dkt. 9-2 at 19.]

Administrative Law Judge Gladys Whitfield (the "ALJ") issued a decision on June 15, 2023,

concluding that Tonya was not disabled and therefore not entitled to receive the requested benefits.

[*Id.* at 19-36.]   The Appeals Council denied her request for review on November 20, 2023.   [*Id.* at

2-8.]   On January 11, 2024, Tonya timely filed this civil action asking the Court to review the

denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361.   [Dkt. 1.]

**I. STANDARD OF REVIEW**

"The Social Security Administration (SSA) provides benefits to individuals who cannot

obtain work because of a physical or mental disability."   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

[2] Leland C. Dudek is the Acting Commissioner of Social Security as of the date of this opinion. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the Defendant in this suit.

(2019).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Stephens*, 888 F.3d at 327.  "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'"  *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."  *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'"  *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions."  *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).    "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."    *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."    *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling."    *Id*.    The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.    *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.    *Stephens*, 888 F.3d at 327.    When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.    *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).    Typically, a remand is also appropriate when the decision is not supported by substantial evidence.    *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND[3]

Tonya was forty-two years old when she applied for disability benefits.    [Dkt. 9-6 at 2.]  She has a high school diploma and previously worked as a government investigator, an

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

apartment manager, an asset manager, an enumerator, a production assistant, a re-entry coordinator, an emergency dispatcher, a secretary, and a surgical coordinator.  [*Id.* at 37.]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Tonya was not disabled.  Specifically, the ALJ found as follows:

- At Step One, Tonya has not engaged in substantial gainful activity since August 28, 2020, the alleged onset date.  [Dkt. 9-2 at 21.]

- At Step Two, Tonya has the following severe impairments: Reynaud's syndrome, fibromyalgia, occipital neuralgia, optic neuritis, small fiber neuropathy, rheumatoid arthritis, seizure disorder, iron deficiency anemia, chronic heart failure, post-traumatic stress disorder (PTSD), and obsessive-compulsive disorder.  [*Id.* at 21-22.]

- At Step Three, Tonya does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  [*Id.* at 22.]

- After Step Three but before Step Four, Tonya has the RFC "to perform light work as defined in 20 CFR 404.1567(b) except she can climb occasionally ramps and stairs, but she can never climb ladders, ropes, of scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She can frequently reach forward, to the side, and overhead. She can frequently handle, finger, and feel.  She must avoid all exposure to extremes of cold, heat, wetness, and humidity.  She must avoid exposure to vibration.  She must avoid more than occasional exposure to environmental irritants (fumes, odors, dusts, gases), and poorly ventilated areas.  She must avoid all use of hazardous machinery and all exposure to unprotected heights.  She is limited to no work with exposure to open flames or large bodies of water.  She is limited to no exposure to strobe lights or flashing lights in the ordinary course of business.  She is limited to work in no more than a moderate noise level (level of three).  She is limited to work not requiring driving or the operation of a motorized vehicle to perform the functions of a job.  She is limited to work that does not require a specific production rate, such as assembly line work or hourly quotas." [*Id.* at 26.]

- At Step Four, Tonya is able to perform past relevant work, including work as a unit clerk and a dispatcher.  [*Id.* at 34.]

- Having found that Tonya was able to perform past work, the ALJ did not proceed to Step 5.  [*Id* at 36.]

4

### III. DISCUSSION

Tonya raises one issue for the Court's review: whether the ALJ erred in conducting the subjective symptom analysis with respect to her fibromyalgia. [Dkt. 12 at 3.] She argues that the ALJ fundamentally misunderstood the nature of fibromyalgia by finding that her subjective reports about the severity of her pain, intermittent paralysis, numbness, migraines, fatigue, and other symptoms were not supported by objective medical evidence, such as imaging studies and physical examinations. [*Id.* at 12-13.] She also argues that the ALJ "did not fairly consider" her husband's third-party report and did not adequately consider her longitudinal medical history. [*Id.* at 11-14.]

The Commissioner responds that the ALJ's subjective symptom analysis was proper in light of the totality of the evidence. [Dkt. 16 at 5-13.] He argues that the Commissioner reasonably relied on physical exams that showed Tonya had normal muscle tone and bulk, sensation, strength, range of motion, and gait. [*Id.* at 6.] He notes that the ALJ relied on expert medical opinions, considered Tonya's daily activities, and considered her husband's third-party report. [*Id.* at 7-8.] With respect to imaging studies, the Commissioner appears to concede that these studies are irrelevant to the severity of fibromyalgia but argues that they may have been relevant to Tonya's other medical conditions, including small fiber neuropathy, arthritis, migraines, congestive heart failure, and functional neurological disorder. [*Id.* at 10-11.]

Tonya replies that the ALJ failed to adequately address her longitudinal medical history, including a course of specialized treatment at the Mayo Clinic and numerous medications to treat the symptoms of fibromyalgia. [Dkt. 17 at 2.] She argues that it was improper for the ALJ to rely on a lack of hospital visits to discredit her subjective reports because fibromyalgia patients are not typically treated in an in-patient hospital setting. [*Id.* at 4-5.] She also argues that the ALJ's reasons for discrediting her husband's third-party report, such as her well-nourished appearance

5

and a lack of gynecological symptoms, are irrelevant to the limiting effects of fibromyalgia, which her husband described at length in his report.  [*Id.* at 3-4.]

"[F]ibromyalgia is a syndrome involving chronic widespread and diffuse pain throughout the entire body, frequently associated with fatigue, stiffness, skin tenderness, and fragmented sleep."  *Cassey A. v. O'Malley*, 2024 WL 3475659, at *4 (S.D. Ind. Jul. 19, 2024).  "Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective."  *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).  Significantly, "[t]he extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment."  *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018).  Because fibromyalgia is "marked by subjective and fluctuating symptoms," *Gebauer v. Saul*, 801 F. Appx. 404, 409 (7th Cir. 2020), patients with fibromyalgia may experience "bad days and good days[,]" *Molly K. v. Saul*, 2019 WL 3857885, at *6 (N.D. Ill. Aug. 16, 2019).

SSR 12-2p "provides guidance on how [SSA] develop[s] evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia."  SSR 12-2p, 2012 WL 3104869, at *1.  The Ruling sets out two diagnostic criteria: "[t]he first identifies the factors required for determining that fibromyalgia constitutes a medically-determinable impairment [and t]he second describes the criteria that should be considered to measure the severity of a claimant's symptoms and to assess the appropriate RFC."  *Molly K.*, 2019 WL 3857885, at *5 (citing SSR 12-2p, 2012 WL 3104869, at *2-6).  The latter closely matches SSR 16-3p, "which controls a symptom evaluation, but [the factors] also contain issues specific to fibromyalgia such as the widespread nature of pain, the fluctuating nature of its symptoms, and the need to be alert to complaints such as unrefreshing sleep."  *Molly K.*, 2019 WL 3857885, at *5.  "If objective medical evidence does not substantiate [a claimant's] statements about the intensity, persistence, and

functionally limiting effects of symptoms, [the ALJ must] consider all of the evidence in the case record, including the person's daily activities; medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." 2012 WL 3104869, at *5.  As is the case with other medical conditions, an ALJ's assessment of a claimant's subjective complaints with respect to fibromyalgia will be reversed only if "patently wrong."  *Margo B. v. O'Malley*, 2024 WL 4187977 at *4 (N.D. Ill. Sept. 13, 2024) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)).

The Court agrees with Tonya that the ALJ erred by relying on imaging studies, Tonya's normal gait and grip strength, her ability to sit and stand during examinations, her well-nourished and healthy appearance, and her gynecological condition to discredit her subjective reports about the severity of her fibromyalgia.  [Dkt. 9-2 at 28-29.]  The ALJ also erred by concluding that Tonya was not disabled simply because her treatment consisted of medication, physical therapy, and psychological counseling and did not include "any invasive procedures" or "significant hospitalizations."  [*Id.* at 31.]  Those findings are largely irrelevant to fibromyalgia and cannot be used to discredit a claimant's reports about the severity of this condition.

The Seventh Circuit Court of Appeals has repeatedly cautioned that "[t]he extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment."  *See*, *e.g.*, *Gerstner*, 879 F.3d at 264.  "Courts have made clear that EMG and MRI testing are not relevant to the diagnosis or severity of fibromyalgia."  *Bonita L. v. O'Malley*, 2024 WL 309022, at *3 (N.D. Ill. June 21, 2024).  "[T]hose suffering from [fibromyalgia] have muscle strength, sensory functions, and reflexes that are normal."  *Madrigal v. Saul*, 2020 WL 2064087, at *4 (E.D. Wis. April 29, 2020).  "A normal gait and normal grip strength do not measure the seriousness of

fibromyalgia's symptoms." *Molly K.*, 2019 WL 3857885, at *8. "Whether [a claimant] can sit or stand during a doctor's visit or has a normal grip or range of motion during a brief test, says nothing of her ability to sustain these activities during an eight-hour workday." *Desmangles v. Saul*, 2021 WL 3007270, at *4 (N.D. Ill. July 15, 2021); *see also Cassey*, 2024 WL 3475659, at *4 (ALJ erred by concluding that a claimant's lack of hospitalizations for fibromyalgia discredited her reports about the severity of her condition) (citing *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) ("Unless emergency treatment can be expected to result in relief, unscheduled treatment in fact makes no sense.")); *Bay v. Berryhill*, 2018 WL 615679 (N.D. Ill. Jan. 29, 2018) (ALJ erred by concluding that claimant was not disabled simply because her treatment for fibromyalgia merely consisted of medications and instructions to lose weight). In this case, the ALJ erred by ignoring this well-established precedent and relying on irrelevant medical findings to discredit Tonya's reports about the severity and limiting effects of her condition.

The Court is not persuaded by the Commissioner's argument that the ALJ may have considered imaging studies such as MRIs, CT scans, and X-rays to assess Tonya's other medical conditions, and not her fibromyalgia, such that the ALJ therefore appropriately relied on those imaging studies in her written opinion. At the beginning of the subjective symptom analysis, the ALJ found that Tonya's neurological conditions, including symptoms arising from fibromyalgia such as pain, numbness, and fatigue, were "the primary reason that [Tonya claims] she is unable to work." [Dkt. 9-2 at 27.] The ALJ then proceeded to evaluate whether Tonya's claims were corroborated by objective medical evidence, which included a discussion of various MRIs, CT scans, and X-rays she had received during the period of alleged disability. [*Id.* at 28.] The ALJ appears to have relied on normal results from MRIs and X-rays to discredit her complaints about frequent migraines and numbness, both of which are symptoms of fibromyalgia. [*Id.*]; *see Moon*

*v. Colvin*, 763 F.3d 718 (7th Cir. 2014) (holding that an ALJ errs by relying on neural imaging to discount a claimant's credibility with respect to chronic migraines). In light of the context in which the ALJ discussed Tonya's imaging studies, the Court agrees with Tonya that the ALJ improperly relied on these studies in discrediting her subjective reports about the severity of her fibromyalgia.

The ALJ also erred by failing to adequately consider Tonya's extensive longitudinal medical history. *See* SSR 12-2, 2012 WL 3104869, at *6 ("For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"). She did not describe Tonya's numerous pain medications, including Duloxetine, Pregabalin, Leflunomide, Toradol, Skelaxin, Celebrex, and Lyrica. [Dkt. 9-7 at 10-14, 209, 217, 226.]; *Molly K.*, 2019 WL 3857885, at *5 (ALJ erred by failing to account for claimant's ongoing and extensive need for medication to treat symptoms of fibromyalgia). She did not describe Tonya's sleep disturbances. [Dkts. 9-7 at 16-17, 118, 249, 254; 9-8 at 185]; *Molly K.*, 2019 WL 3857885, at *6 ("Most importantly, the ALJ did not account for Claimant's unrefreshing sleep. SSR 12-2p places special emphasis on this symptom by including a footnote instructing ALJs to consider testimony 'describing a history of non-restorative sleep, such as statements about waking up tired or having difficulty remaining awake during the day, or other statements or evidence . . . reflecting . . . a history of non-restorative sleep.'"). She did not mention Tonya's intensive in-patient sessions at Mayo Clinic. [Dkt. 9-7 at 6-9.] While the ALJ was "not required to address every piece of evidence or testimony," she "must provide some glimpse into her reasoning" and "build an accurate and logical bridge from the evidence to her conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). In this case, the ALJ's boilerplate recitations of the factors she considered in assessing the severity of Tonya's medical conditions, [dkt. 27-28], do not satisfy that requirement, and the aspects of Tonya's

medical history that the ALJ expressly considered, such as the results of imaging studies and certain findings during physical examinations, are irrelevant to assessing the severity of fibromyalgia.[4]

Tonya's reports about her daily activities do not support the ALJ's determination that her fibromyalgia symptoms are not as severe as she claims. *See Molly K*, 2019 WL 3857885 at *9 (explaining that consideration of a claimant's daily activities is especially important in fibromyalgia cases due to the lack of objective tests for assessing the severity of this condition). Tonya reported that her husband and adult children are the primarily caregivers to her minor child. [Dkt. 9-6 at 85.]  She reported difficulty performing personal care activities such as dressing, bathing, shaving, feeding herself, and using the toilet. [*Id.* at 85-86.]  She states that she is unable to cook because she has burned herself too many times when her hands go numb. [*Id.* at 86.]  The most she can do with respect to housework is fold socks. [*Id.*]  She shops for groceries and children's clothes online. [*Id.* at 87.]  She is unable to engage in previous hobbies, attend religious services, or eat in restaurants because of her medical condition. [*Id.* at 88.]  She reported that she needs to rest for ten to fifteen minutes after walking five hundred feet and that she can sit for no more than twenty to thirty minutes and stand for no more than five to ten minutes. [Dkt. 9-2 at

---

[4] Tonya underwent multiple "Joint Exams" during the period of alleged disability. [Dkt. 9-8 at 74-76, 368-69, 375-76.]  These exams involved an examination of twenty-eight joints by a nurse practitioner. [*Id.*] Tonya states that these were trigger point exams—also called tender point exams in SSR 12-2p—which as mentioned above is the only objective test for fibromyalgia. [Dkt. 12 at 11-12.]  She argues that the ALJ erred by failing to discuss these exams in her written opinion. [*Id.*]  The Commissioner notes in his response that these exams do not meet the criteria for tender point exams in SSR 12-2p, which states that a tender point exam involves examining eighteen points on the body in locations that are different from the locations that were examined during Tonya's Joint Exams. [Dkt. 16 at 9 (citing SSR 12-2p, 2012 WL 3104869, at *3).]  The Court agrees that the Joint Exams Tonya underwent do not appear to meet the criteria for tender point exams, and the Court does not find that the ALJ erred by failing to discuss these specific medical records in her written opinion.

57-58.]  The Seventh Circuit Court of Appeals has instructed that activities such as these do not support an inference that a claimant can perform full-time work.  *See*, *e.g.*, *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (reversing and remanding in favor of disability claimant with fibromyalgia because "her ability to do limited chores, cooking, and self-care says little about her ability to perform the tasks of a full-time job"); *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (reversing and remanding in favor of disability claimant who "prepared meals, shopped, washed dishes, swept, and did a number of other chores," which "fell well short of an ability to do full-time light work."); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (reversing and remanding in favor of disability because "minimal daily activities" such as preparing simple meals, weekly grocery shopping, taking care of family member, and playing cards "do not establish that a person is capable of engaging in substantial physical activity").

Tonya's husband's third-party report states that Tonya remains in bed or a recliner for most of the day due to her pain.  [Dkt. 9-6 at 29.]  He corroborated Tonya's report that she is unable to perform housework, care for their young child, bathe or groom herself, or stand for long periods of time.  [*Id.* at 29-30, 33.]  He further corroborated her report that she suffers from limb paralysis. [*Id.* at 31.]  He also stated that they had to move from a three-story house into a smaller one-story home to accommodate her medical condition.  [*Id.* at 36.]  The ALJ discredited Tonya's husband's report with respect to the severity and limitations of her condition because the medical records showed that she was "healthy and well-nourished," that prior gynecological issues had resolved, that she had a normal gait, and that she had the capacity for abstract thinking.  [Dkt. 9-2 at 33.]  As explained above, established precedent shows these medical findings do not provide insight into the severity of fibromyalgia, *see*, *e.g.*, *Gerstner*, 879 F.3d at 264, and the ALJ erred by relying on them to discredit Tonya's husband's report detailing Tonya's condition.

11

The Commissioner argues that the ALJ relied on several expert medical opinions in discrediting Tonya's husband's report about the severity of her condition, [dkt. 16 at 12-13], but that is not an accurate characterization of the ALJ's written opinion.  The only expert medical opinion that the ALJ expressly referenced while conducting the subjective symptom analysis was Dr. Nieters' report, in which he observed that Tonya had paraspinal spasms, tenderness in the spine, normal dexterity, and the ability to pick up a pen and open a door.  [*Id.* at 29.]  Those observations do not contradict Tonya's reports about the severity of her fibromyalgia.  Further, the expert medical opinions that the ALJ found persuasive and discussed elsewhere in the opinion either corroborated Tonya's self-reports, related to medical conditions other than fibromyalgia, or relied on objective evidence that does not provide insight into the severity and limiting effects of fibromyalgia.  For example, Dr. Feinerman noted that Tonya was "able to sit, stand, walk, hear, and speak normally . . . lift, carry, and handle objects without difficulty during a physical exam," [dkt. 9-8 at 6], but as explained above, those findings do not provide insight into the severity of a patient's fibromyalgia.  The state agency psychological consultants' opinions did not involve an assessment of Tonya's pain, numbness, paralysis, migraines, fatigue, or other fibromyalgia symptoms and therefore could not be relied upon to discredit her subjective reports about the severity or limiting effects of those symptoms.  [Dkt. 9-2 at 32.]  Finally, the state agency medical consultant's determinations that Tonya was capable of performing light work relied on their assessments of the objective medical evidence in Tonya's file.  [Dkt. 9-3 at 46, 69.]  But as emphasized in the case law cited above, the severity of fibromyalgia is largely immeasurable with objective tests, and the state medical consultants do not explain how the objective medical evidence in Tonya's file provided them with insight about the severity of this condition.

The Court is mindful that the nature of fibromyalgia makes it difficult to evaluate, particularly in the context of a disability claim. *See Neyhart v. Commissioner of Social Security*, 2018 WL 4659265, at \*2-3 (N.D. Ind. Sept. 28, 2018) (describing history of fibromylgia case law before and after promulgation of SSR 12-2p). The ALJ's reversible error in this case, however, is that Tonya reported that she suffers a severe and debilitating condition, and none of the factors relied upon by the ALJ in her written opinion contradict Tonya's subjective reports. Additionally, the ALJ erroneously relied on certain factors such as Tonya's well-nourished appearance, her normal gait and grip strength, and normal imaging studies that existing case law makes clear may not be used to discredit a claimant's subjective reports about the severity of her fibromyalgia. Accordingly, the Court agrees with Tonya that the ALJ's decision denying her benefits must be reversed and remanded.

## IV. CONCLUSION

For the reasons stated above, the Court **REVERSES** the Commissioner's decision denying **PLAINTIFF** benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4). Final judgment shall issue accordingly.

**SO ORDERED**.

Date: 3/25/2025

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution

All ECF-registered counsel of record via email

13